That's 4090861. For the appellant, Matthew. Help me out. Thank you very much. And for the appellee, Anastasia Brooks, you may proceed. May it please the court, good morning. I think most of the issues before the court have been briefed sufficiently. I did want to take a couple minutes this morning and sort of flesh out the state's prejudice argument, because this wasn't an issue that was considered by the trial court. This was an issue raised for the first time before this court. So I wanted to take an opportunity to sort of explore that a little bit and emphasize some points. Let me first note that the state's prejudice argument is premised on the trial testimony, and that was entirely prosecution testimony. And that testimony is directly contradictory to what are really the facts of this case, the facts contained in the petition and supported by the affidavits. We're here on a petition to dismiss, and by moving to dismiss, of course, the state accepts the petitioner's facts as supported by the affidavits. When you look at the facts as urged by the petitioner, you get a very different story than what was elicited at trial. Now, admittedly, there are two versions of this event, and of course, this court is not in a position to weigh the credibility of these two versions of events. So I think we need to look at this case from the position of the petitioner and the facts that he's alleged. What we see there is the victim in this case, Nathan French, was part of a group of people who were at a party. The defendant in this case and his friends drove to this party, got out of the car, some arguments ensued. But after that, what you see are two retreats from these arguments. So the state's argument that my client, the defendant, was the aggressor in this case, it really doesn't hold water. Their argument is based on a comment that he made to a girl at the party. And they're sort of trying to spin this as the beginning of this, the initial aggression in this case, and I don't think that has any validity whatsoever. It was a comment made, and the fight didn't actually happen immediately after that. The comment was made, this group began walking down the street, another group followed them, they began walking back to that car, another group followed them, and then my client was attacked. And so, looking at these facts, the question is, was there valid defense in this case? And I think absolutely there was. And I think self-defense was really the only defense considered in this case, and the only viable defense. I don't think there's any question that the stabbing occurred, or that my client did it. The question was, was he in fear for his life? Was he justified in using that force? And I think he absolutely was, and I think a jury could have found that as well. Now then the question becomes, did trial counsel act reasonably in not questioning the only witnesses who could have supported this defense? Now the only way, and let me note that this was the defense from the beginning. Trial counsel knew that the petitioner wanted to assert this defense from the very beginning, he admitted that. Now if you're going to assert this defense, it seems to me it's of crucial importance to at least speak to the witnesses who were there on that night. He didn't do that. And we see from the affidavits that the witnesses that could have testified would have testified that my client acted in self-defense. So I don't see... This case is unusual because we have a post-trial motion filed at which the same claims you're now raising essentially were alleged, and we had a two-day hearing at which time the defense attorney testified. I'm sorry, I'm not sure I understand your question. There was never a hearing on the post-judgment petition. Didn't Costello testify at the hearing on the post-trial motion? He testified at the hearing on the motion to withdraw the guilty. Okay, and wasn't that motion based on much of the same stuff that you're now raising? No, Your Honor. As a for instance, why wasn't Costello asked at that hearing about what did you do and how did you do it and bring out all of this? He was, Your Honor, he was asked. And? I think the exact phrasing was, were there any witnesses brought to your attention that you ignored? And he answered no. And on that basis, the trial court denied the motion. Now, later in the post-judgment petition, affidavits were submitted of these witnesses who said, I never heard from the trial attorney. He never talked to me. This is what I would have testified to. I would have testified favorably. But I was never contacted. So why wasn't this matter pursued with Costello on the bench to establish, or on the witness stand to establish any of these grounds? Well, you know, once he testified to that fact, I don't know that there was anything more to do other than to call these other witnesses. Well, okay. That's a starter. Well, it was a very brief span of time. There's no evidence in the record that… I mean, when are things more fresh? We just had the trial started and the guilty plea in the middle of trial. Now we have a post-trial motion. We're talking about, what, less than 60 days, right? Okay. Memories would be most fresh then. And how about from the defendant? And he's got new counsel, right? Correct. Okay. So if there's a problem, this guy was bad. He didn't do all this stuff. I told him about X, Y, and Z, and he didn't interview them. Put on X. I mean, after all, he got this affidavit from them. Call X, Y, and Z, have them testify at the hearing. Yeah! I was available. Costello never talked to me. We have none of that. Well, we have none of that. And part of the reason for that may have been that when Costello was urging my client to take a plea, he was telling my client that his friends were going to testify against him. And the plural here is a small distinction, but it's important because there was one of the friends who was going to testify, but only one. This guy pled after hearing almost all of the state's case, didn't he? He pled after being urged to. That's not my question, counsel. He pled after hearing almost all of the state's case against him, didn't he? Yes, that's right. Now, given the strength of the state's case and how these witnesses, from a reading of this record, were hardly dramatically impeached by anything, how is it improper for Costello to have recommended to his client, you know, this doesn't look good, you might want to plead guilty here? Well, it's improper if no defense was prepared. If Costello had interviewed these witnesses and said, I know what they're going to say, I know what the state said... So we should let the defendant not pursue this adequately, apparently to make any kind of record, at the post-trial hearing on the motion to withdraw his guilty plea. That's okay, and then X months later filed a post-conviction petition, at which now he presents affidavits from these people who supposedly were available at trial to testify and didn't, and weren't contacted and all this other bad stuff, but the defendant never put them on at the hearing. Well, the defendant didn't know at the time that they were not contacted. Well, why not? Because he gave... This is his motion to withdraw, he's got counsel. Why doesn't he tell them, gee, you know, X, Y, and Z, put them on. Apparently discovered this for purposes of his post-conviction petition, but he couldn't know it within two months? No, Your Honor. I think at the time, you know, he gave his witnesses to his attorney. His attorney was asked, essentially, did you talk to these witnesses? His attorney said, yes. How many bites on an apple should a defendant have to raise claims that could have and should have been raised at the hearing that he was provided by the court on the very issue? Well, I think this is exactly the purpose of a post-judgment petition. Well, that might have been the case had there been no motion filed post-trial to withdraw the guilty plea at which the same issue was litigated. But we had it fully litigated here, did we not? I don't believe we did. And what stopped your client from fully litigating the matter at the hearing on the motion to withdraw his guilty plea? I don't think there was any reason for him to suspect that these witnesses were never contacted. So he didn't have to ask them? So he decides to ask them, what, two years later and, oh, you were never contacted? Well, by God, I'm going to file a post-conviction petition. Well, I think it's reasonable for a client to rely on the testimony of his attorney or his former attorney under oath in court when he's asked this question. Now, I think if Costello had said, yes, there were witnesses who were there that night that I never contacted, I think there's a very different result in the trial court. I think the guilty plea gets withdrawn. But the trial counsel made the decision to testify the way he did. Now, I don't think it's unreasonable for a client to rely on his attorney's words under oath. And I also don't – and remembering, my client was incarcerated. It was a fairly short period of time. He's been incarcerated ever since, hasn't he? He has, but he's had a longer time to investigate now. So now he can bring out – now he can pursue his post-conviction petition years later by asking questions of these witnesses that he couldn't within two months. That's right, Your Honor. I think that's the point of the post-conviction statute. I think that's the whole point of the system. This is new evidence that wasn't necessarily available at trial. And it wasn't available because your client chose not to ask. I don't think he chose not to ask. Certainly these witnesses who he got affidavits from years later were available within 60 days. Well, his attorney did ask the question on the stand. And I think for that – But he chose not to present or ask questions of the supposed key witnesses who weren't contacted. And that's essentially the only thing we have here. Costello did a bad job that he didn't contact these witnesses. Isn't that right? Well, I don't think it's a bad job. I think it's ineffective assistance. Okay. He was ineffective because he didn't contact these witnesses, but we never asked the witnesses to testify at the hearing on that very subject within 60 days.  That's correct, Your Honor. Why should the judicial system tolerate this? Well, because, Your Honor, I don't think my client should be, for lack of a better word, penalized for seeking to withdraw his guilty plea. That's what this motion was on. How is he being penalized? He had every opportunity to present anything he wished, didn't he? Well, he had a very abbreviated time frame in which to investigate this. The trial court said, Oh, gee, I'm sorry. I've got to get back on the back nine this afternoon. I'm not going to hear any more witnesses? Well, no, Your Honor, but there are time constraints that are not present or as present in a post-conviction petition. You know, there are lots of times in a post-conviction where you could say, why didn't you investigate this then? Why didn't you know this then? But the basis of a post-conviction petition is largely based on new evidence, and this is the new evidence, and this is evidence that contradicts the very testimony that was presented. Like newly discovered evidence which was not available at the time the earlier proceeding. Correct. Correct. And it was not available. The trial court said that the facts supporting the defendant's version were contained in the PSI. So if they were there, didn't everybody know about them at an early stage? Well, that goes to sentencing, certainly, that those facts weren't available prior to the entry of the guilty plea or the motion to withdraw the guilty plea. The PSI came in prior to sentencing, obviously, but the period of time we're looking at is prior to the entry of the guilty plea, and whether that guilty plea was entered knowingly or voluntarily. The information contained in the PSI is after that period of time that we're looking at, but yes, I suppose that at sentencing there was a version of events that took place there, but that certainly wasn't before the court, either during this hearing, and it certainly wasn't known prior to the entry of the guilty plea. As I was saying, I think that the self-defense justification was here, and I think that the decision not to interview crucial witnesses, and there were crucial witnesses in this case, can in no way be considered trial strategy, and I think in no way can be considered reasonable under the circumstances. I think if you know the defense is self-defense, these are the witnesses that you want to interview, that you want to know what they're prepared to testify to. And I think without knowing that, it's impossible for a defense counsel to give a full, complete, and competent advice to a defendant to plead guilty. At that point in time, I think not knowing what these witnesses would say, I think the advice to plead guilty may have been reasonable. If there were no other evidence other than what the state put on, then yes, it looked bad, but there were witnesses available to contradict the state's evidence, and as a side note, the prosecution would bear the burden here. So when you have two conflicting versions of events, plausible versions of events, the self-defense justification wins the day. And lastly, I would just add that we don't know, there's nothing in the record to determine whether trial counsel had any reason not to talk to these witnesses, and that's sort of one of the issues that could be raised in an evidentiary hearing. He may get on the stand and say a number of things, anywhere from yes, I did talk to these witnesses, he's absolutely right, they're false, to I just didn't talk to them, I have no excuse, I should have, or anything in between, but these are all evidentiary questions. These are not questions to be decided on a motion to dismiss. I think on the facts asserted in the motion to dismiss, an evidentiary hearing is warranted. If there are no questions. Thank you, counsel, you will have rebuttal. Thank you. Ms. Brooks. May it please the court and counsel, my name is Anastasia Brooks and I represent the people in this case. First I would like to respond to the defendant's suggestion that the state has waived its prejudice argument by raising it for the first time on appeal when it's clear that the state as an appellee can raise any issue that's supported by the record while urging affirmance of the judgment because this court reviews the judgment and so it's not like a timeliness argument which has to be presented before the circuit court in order to be asserted. The prejudice is actually something that the defendant has to establish under Strickland. It's the defendant's burden to show prejudice and if his post-conviction petition does not make a substantial showing of a constitutional violation, here being the claim of ineffective assistance of counsel, an element of that, a required element of that, is prejudice. So that's something that his petition has to establish. If it doesn't establish it, it's insufficient to survive the motion to dismiss. Whether that was raised in the motion to dismiss or not, that's something that makes his petition legally insufficient and therefore properly dismissed. So for that reason, the state does rely on this prejudice argument. The defendant also claims that our prejudice argument relies solely on, I believe that was his argument, that we rely solely on the trial testimony from prosecution witnesses. However, it's not entirely the case because while we do rely heavily on the prosecution's trial evidence, in support of our prejudice argument, I also make arguments with respect to the defendant's testimony, which I believe came post-trial. He pleaded guilty, obviously, before he had a chance to testify at his own trial. Also, his version of events in the post-conviction petition, as well as the version of events relied on in his affidavits, particularly the Nichols affidavit, one of his friends. And so, the state's claim is that the defendant's, even the defendant's version of events, if believed, does not exonerate him because he does not meet all the required elements for a successful claim of self-defense. So, the procedural posture here is the question that's really at issue here, underlying his ineffective assistance claim, is whether his self-defense claim likely would have succeeded at trial. That's the Pew case, dealing with such claims of ineffective assistance of counsel. When counsel convinces the defendant to plead guilty while he has this potential self-defense claim, that's the issue, whether it's a viable claim of self-defense or not. And also, whether he has shown that there was, in fact, a failure to investigate sufficiently, that he'd also have to prove, in other words, that the attorney was incompetent and rendered unreasonable assistance by failing to investigate the case. But even if he can't show, even if he can show that the representation was deficient, he still has to show prejudice in order to succeed. And to be completely exonerated of armed violence, which is what he's requesting now, he's got to meet all the claims of self-defense. Now, I'm not going to go through all of them, but the ones I'd like to focus on are the second one, which is the defendant has to be not the aggressor. The fourth element, which is threatened force has to be unlawful. That's the force that was threatened by Nathan French. And also, elements five and six, which are together, that the defendant objectively believed that the danger that he faced required the extent of force that he applied, which was stabbing Nathan French in the leg, severing his femoral artery, and almost killing him. So it is also a special rule that deadly force, that is force likely to cause at least great bodily harm, of which stabbing the knife in the Nathan French's leg would have been, the defendant must reasonably believe that such force is necessary to prevent imminent death or great bodily harm. Now, there is a conflict in the evidence in terms of the sequence of events. According to Nathan French, and the testimony of the people who were at the party with Nathan French, Nathan French had tried to break up the fight. The defendant was going around punching and swinging his knife at bystanders, and the defendant then sliced French's arm before French had made any contact with him. Now, that would be a clear case of no self-defense, because that means that the knife stabs would have preceded French supposedly, according to the defendant, kneeling him in the head and also choking him. Those were the allegations that the defendant made. Now, the defendant reverses the sequence of stabbing. He claims that he stabbed the leg first and then sliced Nathan French's arm after he was being choked. But the key distinction here is that the defendant's claim is that he had stabbed the leg prior to being choked. Now, that was in his own version of events. The allegation he made is that he was getting kneed in the head three or four times. Now, being kneed in the head is, he would have to convince a trier of fact, is something that he would have to show is imminent death or great bodily harm. In other words, to justify him using a knife to stab Nathan French in the leg at that point. And that's prior to him being choked to the point of losing consciousness, according to the defendant's version. Also, the defendant's version includes facts such as him showing up uninvited at a party and making a vulgar remark to a woman who was at that party. And thereby provoking the confrontation that ensued. And the fact that mere words can even qualify someone to be an aggressor. And so he'd have to show, he's arguing on appeal that he made some retreats from these arguments and confrontations. But that would have to be a question. The fact that he would have to show, before he could use force if he were an aggressor, he would have a duty to retreat. Could he have made it to the car? Could he have fled down the street? Did he try to run away or did he just simply pull out his knife and start swinging it around at people who were approaching? As far as the force being unlawful, it was not unlawful. And the reason for it was that when French approaches to try to diffuse the situation and disarm the defendant, he is acting lawfully for three separate reasons. He could make a lawful citizen's arrest because the defendant was going around battering bystanders and waving a knife. This is assault. And also, French could act in his own self-defense after he was cut in the arm. And he can act in defense of others who were being threatened by the defendant swinging the knife and battering at this party. Also, the defendant contests my reading of the Nichols affidavit and we do base it on an inference. What's not really completely spelled out in plain words from that affidavit can still be a strong inference to be drawn there from. The fact that when Nichols pushes French off of the defendant and then goes down and the defendant runs away, it can be strongly inferred, therefore, that what happened was Nichols had freed the defendant from French at that point. And then the defendant stabbed French in retaliation before fleeing. At that point, it would clearly be not self-defense if he was no longer being grappled and choked by French when the stabbings occurred. So for that reason, the defendant's own evidence does not really help him. In fact, it would make his case even worse. As well as the Byron Helton, who was going to highly damage him and the reason why Michael Costello convinced him to plead guilty, was his best friend who was going to testify against him. So for those reasons, there is no prejudice and the dismissal of this petition should be affirmed. And briefly, with respect to criminal history, correcting the criminal history would result in 15 Class A misdemeanors before the defendant reaches his 20th birthday. It's a massive total and there was no showing that the trial court had relied on the felony nature of the aggravated assault conviction. It was referenced as being a felony by the trial court, but the focus really was on the fact that it was yet another crime of violence in the defendant's history. And the fact that he had so many opportunities to rehabilitate himself but continued to violate probation, particularly coming back to Logan County and getting involved in this offense, demonstrates that the trial court's sentence was not an abuse of discretion and there's no reasonable probability that had these issues been raised, either in trial court and on appeal, that the sentence would have been reduced from 17 years. 17 out of a range of 10 to 30. So for that reason, the state requests this court to affirm. And if you have any questions, I would entertain them. Seeing none, thank you, Counsel. Thank you, Your Honor. Rebuttal, please. Just briefly, Your Honors. I think the state's admission that there is a conflict of evidence here is important. I think that's a large part of this case. And just to reiterate the allegations as alleged by my client, he says he was put in a headlock, that people were standing around and yelling, trying to get kicks in on him. The defendant was on top of him. He was kneeing him in the head. He was seeing flashes. And at that point, there was the stabbing. Now, to say that he was not in fear at that point in time of bodily harm seems to me unreasonable. I think given those facts, this was a large group of people. They were all attacking him. He was in a vulnerable position. He was seeing flashes. He was getting kneed. That's when the stabbing happened. I think a jury could easily come back with a self-defense justification. If there are no questions. No further questions from the court. Thanks to both of you. The case is submitted and the court stands in recess until 1 o'clock.